United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RUPERT, ET AL., | No. C 10-00721 SI |
| Plaintiffs, | **ORDER GRANTING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| BARBARA J.R. JONES, ET AL., | |
| Defendants. | |

Currently before the Court is the County defendants' Motion for Summary Judgment [Docket No. 67]. Having considered the papers submitted, and for good cause shown, the Court GRANTS the County Defendants' Motion for Summary Judgment.

**BACKGROUND**

This case stems from the seizure and sale of real property located in Point Arena, California ("Property") by the Mendocino County Sheriff's Office on July 10, 2001. First Amended Complaint ("FAC") ¶¶ 4-5. Plaintiffs allege that the seizure and sale suffered from various substantive and procedural defects, arguing that the sheriff's deed was "void *ab initio*" and the tax liabilities that led to an execution lien and eventually the sale were "mistakenly and erroneously" assessed. *Id.*, ¶¶ 4-5, 13. The Property, at the time of the sale, was owned by Ronald E. Bushnell, who initiated a number of proceedings and appeals in state court in an effort to contest the California Franchise Tax Board

1 ("FTB") tax assessment and lien that led to the sale. *See* Plaintiffs' RJN, Ex. 22 at 2-3.[1] Plaintiffs allege
2 that when Mr. Bushnell died in March 2002, plaintiff Slater received a quit claim deed to the Property
3 through probate. FAC., ¶ 4, 12. Plaintiff Rupert alleges he received a 50% interest in the Property by
4 a Deed of Gift from Slater. *Id*., ¶ 5.

5 On July 24, 2002, after the death of Bushnell, plaintiff Slater filed an action for quiet title in state
6 court, naming the individuals who purchased the Property at the sheriff's sale as defendants. *Id*., ¶ 12.
7 On December 12, 2002, Slater filed a First Amended Complaint in state court naming the FTB, FTB
8 employees, and various Mendocino County offices, officers and employees as defendants. The state
9 court FAC added causes of action for violations of FTB regulations and procedures; fraud, deceit and
10 misrepresentation; extortion or wrongful taking under color of right; due process violations under 42
11 U.S.C. section 1983; refund of taxes; declaratory relief and specific performance; conspiracy; and
12 punitive damages. *See* County RJN, Ex. A. Relevant to this action, the County of Mendocino,
13 Mendocino County Sheriff's Office, Anthony Craver, Jean Hutchings and Maria Dunn were named as
14 defendants in the state court action ("County defendants"). *Id*.[2] The claims against the County
15 defendants were based on allegations that the sheriff's deed was "defective and dishonest," *id*. at 4, and
16 that the defendants failed their obligations to correctly and properly enforce the law. *Id*., ¶ 6-10. The
17 state court FAC also alleged that defendant Dunn, a clerk in the Civil Division of the Sheriff's Office,
18 exceeded the scope of her employment when she published knowingly false ads for the sheriff's July
19 2001 sale, and executed and subsequently recorded the false sheriff's deed. *Id*., ¶ 10.

20 The Superior Court granted the County defendants' demurrer and dismissed Slater's claims with

---

[1] County Defendants request that the Court take judicial notice ("County RJN") of various documents from plaintiff Slater's state court actions. [Docket No. 69]. Plaintiffs also request that the Court take judicial notice ("Plaintiffs' RJN") of additional documents filed in either Bushnell's or Slater's prior state court actions. [Docket Nos. 81-82]. As this Court may take judicial notice of each of these documents, the requests are GRANTED. *See e.g.*, *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state court pleadings, decisions and opinions in order to determine what was alleged and litigated in state court).

[2] The only current County defendant not explicitly named in the state court action is the Mendocino County Board of Supervisors. *Compare* FAC [Docket No. 7] *with* County RJN, Ex. A. However, as a matter of state law, the Mendocino County Board of Supervisors is "Mendocino County."

prejudice. County RJN, Ex. B at 1.[3] The Superior Court found that Slater did not have standing to pursue her claims because she did not comply with the Government Tort Claim Act and her claims were barred under *res judicata* by the prior actions filed by Bushnell concerning the validity of the FTB tax warrant and lien. Plaintiffs' RJN, Ex. 20 at 1-2. The Court of Appeal affirmed the judgment that Slater lacked standing to pursue most of her claim.[4] Plaintiffs' RJN, Ex. 22 at 6-7. The Court reversed the dismissal of her Fifth cause of action for Section 1983 deprivation of due process rights, finding that to the extent her 1983 cause of action is based on events that occurred after January 24, 2001, they were not barred by the Bushnell proceedings under *res judicata*. *Id*., at 7-9. On remand, the Superior Court held that Slater's Section 1983 cause of action for deprivation of due process rights was, instead, barred by the one year statute of limitations. County RJN, Ex. B at 3 & Exhibit B thereto. The Superior Court entered judgment on Slater's claims on March 24, 2006. RJN, Ex. B. In her appeal of that judgment and with respect to her claims against the County Defendants, Slater argued that: (1) she should have been allowed to amend her complaint to state a claim for inverse condemnation; and (2) that the Superior Court wrongly decided the statute of limitations issue. County RJN, Ex. C.

On November 13, 2007, the Court of Appeal affirmed the judgment, holding that Slater's cause of action under Section 1983 was barred by the statute of limitations. County RJN, Ex. D at 5-8. Specifically, the Court held that even if Slater's December 2002 First Amended Complaint against the County defendants could relate back to her original quiet title complaint, filed on July 24, 2002 against the Property purchasers, Slater's section 1983 claims against the County defendants based on procedural deficiencies in the sheriff's notice of sale and the sale had accrued no later than the July 10, 2001 sheriff's sale. *Id*., at 7-8. On December 17, 2007, the Court of Appeal filed an amended opinion, adding a section explicitly rejecting Slater's argument that she should have been allowed to amend her complaint to state a claim for inverse condemnation. County RJN., Ex. E. The Court held that plaintiff

---

[3] The trial court also sustained a demurrer with prejudice to Slater's quiet title-related claims against the purchasers of the Property. Those rulings were affirmed on appeal. *See* County RJN, Ex. B at 2 [Trial Court March 24, 2006 Judgment].

[4] The Court of Appeal affirmed the demurrer for lack of standing as to Slater's Third (fraud), Seventh (Declaratory/Specific Performance), Eighth (Conspiracy to deceive) and Ninth (punitive damages) causes of action against the County defendants. *Id*.

3

Slater could not state a claim for inverse condemnation because the loss of the Property was not through an assertion of eminent domain by the State, but through the seizure and sale of property for delinquent taxes. *Id.* at 2. Plaintiff Slater's petition for review to the California Supreme Court was denied on February 20, 2008. County RJN, Ex. F.

On February 19, 2010, plaintiffs filed a Complaint in this Court and then filed a First Amended Complaint on June 8, 2010. As relevant to the County Defendants, the FAC alleges claims for violation of the Fifth Amendment for the unconstitutional deprivation of the Property; violation of the Fourteenth Amendment's due process and equal protection guarantees by the application of California Code of Civil Procedure section 701.680[5]; violation of "civil rights" against the County of Mendocino and defendant Craver for failure to train and maintenance of unlawful customs and policies; a claim for declaratory relief concerning whether the sheriff's deed is void; and a claim for injunctive relief to allow plaintiffs to recover the Property.

The FAC explains that the purpose of this case is two-fold. First, plaintiffs seek vindication for their constitutionally protected property rights and just compensation for their federal inverse condemnation action. FAC ¶ 14. Second, plaintiffs seek declaratory and injunctive relief to "correct and eliminate" the effect of California Code of Civil Procedure section 701.680, which sets the time for moving to set aside a properly conducted execution sale. *Id.*, ¶¶ 17-19. In addition to their request for declaratory and injunctive relief, plaintiffs seek damages of no less than $2,000,000 as well as special and punitive damages. *Id.*, at 32-22.

On September 29, 2010, the Court granted with prejudice the motion to dismiss brought by the other defendants in this case, judicial officers and former FTB employees. [Docket No. 78]. With respect to the former FTB employees, this Court held that plaintiffs' claims were barred as a matter of law by *res judicata*. *Id.* Specifically, the Court found that plaintiffs' claims against the FTB defendants in this case were the same as those raised the state court proceedings; the state court determination on Section 1983 that the FTB former employees were not "persons" within Section 1983 was final and on the merits; and plaintiff Rupert was in privity with plaintiff Slater and, therefore, was bound by the final

---

[5] California Code of Civil Procedure 701.680 addresses the procedures for and remedies from a sale of property to enforce a money judgment.

4

decision of the state court. *Id*. at 8-11.

Currently before the Court is the County defendants' motion for summary judgment, arguing that *res judicata,* collateral estoppel and the *Rooker-Feldman* doctrine bar plaintiffs' claims and that plaintiffs also fail to state a claim.[6]

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). This motion was filed before the most recent revision of Rule 56 went into effect. The standard for granting summary judgment has not changed. As the Committee notes on the recent amendment state: Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325. Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that

---

[6] County defendants also argue that plaintiffs lack standing to bring these claims, plaintiffs claims are barred by the statute of limitations for Section 1983 actions, and defendants Craver and Dunn must be dismissed for insufficient service. As the Court grants summary judgment on other grounds, the Court need not reach these additional arguments.

5

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(e) (current-Rule 56(c)(2)).

## DISCUSSION

### 1. Fifth Amendment Takings Claim (Third Cause of Action)

Plaintiffs allege that the County defendants' conduct – as well as the conduct of the already dismissed FTB defendants – resulted in an unconstitutional taking of the Property without compensation. However, as this Court noted in its September 29, 2010 ruling dismissing the FTB defendants, the Ninth Circuit has held that where the substance of a state court action and a subsequent federal court takings action are substantially similar – in terms of the factual circumstances pled and the relief sought – the federal takings action is barred by *res judicata*. *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010).[7] This is true even if the federal takings claim only became ripe after the conclusion of the state court action. *Id.* at 1149-50 (recognizing that this rule "will prevent many takings plaintiffs from asserting their causes of action in federal court"). This is

---

[7] Under the doctrine of *res judicata* (also known as the claim preclusion doctrine), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *Res judicata* will bar a later suit where the first case, "(1) involve[d] the same 'claim' as the later suit, (2) ha[s] reached a final judgment on the merits, and (3) involve[d] the same parties or their privies." *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1404 (9th Cir. 1993).

6

exactly the situation here.

First, plaintiffs' federal takings claim is based on the same facts alleged in the state court action. *Compare* State Court FAC at 1-4 [County RJN, Ex. A] *with* FAC at 7-10. The relief sought here, compensation for the loss of the property (FAC at 32), is the same as the relief sought in the state court action. *See, e.g.*, RJN, Ex. A ¶¶ 117, 119, 127, 147. Second, the decision of the trial and appellate courts – rejecting plaintiff Slater's claims for fraud, declaratory/specific performance, conspiracy to deceive and punitive damages against the County defendants – were on the merits and reached a final judgment. *See* Plaintiffs' RJN, Ex. 20 at 1-2 (dismissing claims for lack of standing and *res judicata*); Plaintiffs' RJN, Ex. 22 (affirming dismissal). Third, as noted in the Court's prior order, plaintiff Rupert is in privity with plaintiff Slater for purposes of *res judicata*. *See* September 29, 2010 Order at 10-11. As such, plaintiffs' taking claim against the County defendants is barred by *res judicata*.

**2. Violation of Constitutional Rights - Fourth Cause of Action.**

Plaintiffs' Fourth Cause of Action is for "Violation of Constitutional Rights - Fourteenth Amendment." In this cause of action plaintiffs complain of the "State of California and the Defendants[']" enforcement of California Code of Civil Procedure section 701.680, which limits the circumstances under which execution sales to enforce money judgments can be set aside. FAC, ¶ 41. Plaintiffs argue that application of section 701.680 by the Courts below denied them equal protection of the laws because others citizens have additional or different rights to challenge other types of sales, such as tax or non-judicial foreclosure sales. FAC, ¶ 43; *see also id.*, ¶ 58 (asserting there is "no rational basis for the current separate and unequal treatment of Tax Deeds, Trustee's Deeds and Sheriff's Deeds. . . ."). Plaintiffs also argue that they were denied their property without due process of the law because of procedural deficiencies in the underlying assessment of the tax deficiency which led to the lien and sheriff's sale. FAC, ¶¶ 42. These claims, however, are deficient as a matter of law.

With respect to the equal protection claim regarding application of Section 701.680, plaintiffs do not allege that they were discriminated against based on a suspect classification, such as race or gender. Where a suspect classification is not involved, the law must bear a rational relationship to a legitimate state interest to survive an equal protection challenge. *New Orleans v. Dukes*, 427 U.S. 297,

1 303-04 (1976). Here, the fact that California does not allow judgment debtors to set-aside execution
2 sales when those sales are made to third-parties (the statute allows a set-aside action where the purchaser
3 is the judgment creditor; *see* Section 701.680(c)(1)), but California allegedly allows other judgment
4 debtors to set-aside other types of sales, is not a denial of equal protection. California's decision to
5 protect third-party buyers in judgment enforcement sales bears a rational relationship to legitimate state
6 interests – including encouraging third-party buyers to participate in these sales so that judgments may
7 be satisfied and encouraging judgment debtors to challenge the underlying judgments *prior* to the time
8 a sheriff or marshal conducts a sale pursuant to Section 701.680.

9 Plaintiffs' due process claim, based on the alleged procedural deficiencies in the underlying tax
10 assessment and related proceedings, is likewise without merit.[8] As an initial matter, the number of
11 proceedings in state court where Bushnell (the predecessor in interest to the Property) and/or Slater
12 contested the validity of the tax assessment and lien which led to the sheriff's sale demonstrate that
13 plaintiffs had more than adequate due process. *See, e.g.*, Plaintiffs' RJN, Ex. 22 at 2 (noting prior court
14 proceedings concerning validity of Bushnell's claim of exemption from the FTB warrant, and second
15 appeal where court affirmed the rejection of Bushnell's exemption claim and held that "the FTB had
16 issued its warrant in a timely fashion, that the FTB could properly levy against real property, that the
17 instructions for the levy were proper, and that the FTB was not required to obtain a judgment prior to
18 levying on Bushnell's property, and that the FTB did not violate its internal procedures.").[9]

19 Moreover, plaintiffs' attempt to relitigate the validity of the assessment here, is also barred by
20 *res judicata* as well as the *Rooker-Feldman* doctrine. As noted above, in Slater's first appeal of the
21 demurrer to her Section 1983 claim in state court, the appellate court found that Slater had standing to
22 allege a Section 1983 violation, but that she could not state a cause of action based on events that

---

[8] Due process "require[s] that notice generally be given before the government may seize property." *Clement v. City of Glendale*, 518 F.3d 090, 1093 (9th Cir. 2008). "To determine what procedures are required, we balance the competing government and private interests." *Scofield v. Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988).

[9] To the extent plaintiffs are arguing that Section 701.680 does not provide adequate due process protections because it fails to provide a remedy for procedurally defective enforcement sales, that argument is also rejected. While Section 701.680 prohibits setting aside sales to third-parties, it does allow judgment debtors to set-aside sales to judgment creditors and to sue the levying office for damages. *See* Section 701.680(c)(2).

8

1 occurred before January 24, 2001 due to *res judicata* stemming from the Bushnell actions.[10] Plaintiffs' RJN, Ex. 22 at 9. In connection with the Fourth Cause of Action here, plaintiffs complain of the process associated with the underlying tax assessment (*e.g.*, actions in 1998 and 1999). Plaintiffs do not identify any acts that occurred after January 24, 2001, other than the sheriff's sale and resulting deed that plaintiffs' allege flowed directly from the "mistaken and erroneous deficiency." FAC, ¶ 42. Finally, what plaintiffs are seeking to do in this cause of action is to relitigate the state court rulings finding that the tax deficiency and levy were valid. The *Rooker-Feldman* doctrine bars federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *See, e.g.*, *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). That is exactly what plaintiffs are trying to do here by repeatedly arguing that the tax assessment and lien were not valid.

### 3. Violation of Constitutional Rights - Fifth Cause of Action.

Plaintiffs' Fifth Cause of Action, also brought under Section 1983, is for violation of the First, Fourth, Fifth and Fourteenth Amendments based on the defendants' alleged failures to train and supervise and their maintenance of unlawful customs and policies. The allegations against the County defendants center around their alleged failure to follow the proper procedures for execution of judgment sales. Specifically, plaintiffs allege that the County defendants should have "released" the Property because the FTB defendants failed to maintain the tax lien and the underlying FTB tax "warrant for collection" had expired. FAC, ¶ 53. Plaintiffs allege that as a result, the County Defendants advertised and conducted the sale "in a jurisdictional vacuum." *Id.* However, as with their Fourth Cause of Action, plaintiffs' claim rests on their assertion that the underlying tax warrant was defective. These allegations were raised and decided against plaintiffs in the Bushnell and Slater state court actions. *See, e.g.*, Plaintiffs' RJN, Ex. 22 at 2 (discussing findings in the First Appellate Division's October 23, 2001

---

[10] A civil rights claim brought under 42 U.S.C. § 1983 in federal court is subject to principles of issue and claim preclusion by a prior state court judgment. *See Allen*, 449 U.S. at 97-98 (issue preclusive effect in federal court of state proceedings is same as that accorded in state's own courts); *Migra*, 465 U.S. at 84 (extending rule of Allen to cover claim preclusion as well as issue preclusion). A civil rights action under § 1983 thus may be dismissed as barred by *res judicata*, for example, if a prior California state court judgment rendered a valid judgment on the merits in favor of a defendant. *See Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850-51 (9th Cir. 1986) (citing *Slater v. Blackwood*, 15 Cal.3d 791, 795 (1976)).

9

1 opinion regarding validity of warrant and levy), 12-15 (rejecting Slater's attempt to set aside the sale
2 based on alleged deficiencies in the warrant and sale). For the reasons explained above, plaintiff cannot
3 seek to relitigate those issue in this case in light of *res judicata* and the *Rooker-Feldman* doctrine.

### 4. Declaratory Relief (Sixth Cause of Action)

With respect to the County defendants, plaintiffs' Sixth cause of action seeks a declaration from this Court that the sheriff's deed is void. This claim is barred. Slater raised this exact claim in her state court proceedings. *See, e.g.*, County RJN, Ex. A at 50-51, 62 [State Court FAC]. The state trial court sustained a demurrer to all of Slater's claims that could support her argument that the deed was void under state law – *i.e.*, the quiet title claim against the purchasers of the Property at the sheriff's sale, as well as her claims for fraud, declaratory relief/specific performance, and conspiracy to deceive, extort and deprive against the County defendants – on the basis of lack of standing and *res judicata* in light of the prior Bushnell proceedings. *See* County RJN, Ex. B at 1-2 [Trial Court 3/24/06 Judgment]; *see also* Plaintiffs' RJN, Ex. 18 at 1-2 [Trial Court Ruling]; Plaintiffs' RJN, Ex. 20 at 1-2 [Trial Court Ruling on Motion for Reconsideration]. Those rulings were affirmed on appeal. Plaintiffs' RJN, Ex. 22 at 6 [Court of Appeal Decision]; *see also* County RJN, Ex. B at 2 [Trial Court 3/24/06 Judgment] (noting that the trial court's rulings on Slater's claims against the purchasers of the Property at the sheriff's sale were affirmed). Plaintiffs, therefore, are barred by *res judicata* from asserting a declaratory relief claim seeking the same remedy from this Court.[11]

### 5. Injunctive Relief (Seventh Cause of Action)

With respect to the County defendants, plaintiffs' Seventh cause of action seeks an order from this Court allowing plaintiffs to "recover the SUBJECT PROPERTY." FAC, ¶ 68. This claim is barred. In her state court action, plaintiff sought injunctive relief for return of the Property. *See, e.g.*, County RJN, Ex. A at 61 [State Court FAC]. The state trial court sustained a demurrer to all of Slater's claims

---

[11] Even if not barred by *res judicata*, the *Rooker-Feldman* doctrine would bar this Court from reviewing plaintiffs' claim for declaratory relief that the sheriff's deed was void, as plaintiffs are trying to get this Court to review and overturn the state court decisions.

10

that could support her claim for return of the Property – *i.e.*, the quiet title claim against the purchasers of the Property at the sheriff's sale, as well as her claims for fraud, declaratory relief/specific performance, and conspiracy to deceive, extort and deprive – on the basis of lack of standing and *res judicata* in light of the prior Bushnell proceedings. *See* County RJN, Ex. B at 1-2 [Trial Court 3/24/06 Judgment]; *see also* Plaintiffs' RJN, Ex. 18 at 1-2 [Trial Court Ruling]; Plaintiffs' RJN, Ex. 20 at 1-2 [Trial Court Ruling on Motion for Reconsideration]. Those rulings were affirmed on appeal. Plaintiffs' RJN, Ex. 22 at 6 [Court of Appeal Decision]; *see also* County RJN, Ex. B at 2 [Trial Court 3/24/06 Judgment] (noting that the trial court's rulings on plaintiff's claims against the purchasers of the Property at the sheriff's sale were affirmed). Plaintiffs, therefore, are barred by *res judicata* from asserting an injunctive relief claim seeking the same remedy from this Court.[12]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the County defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: March 9, 2011

SUSAN ILLSTON
United States District Judge

---

[12] As with the declaratory relief claim, even if not barred by *res judicata*, the *Rooker-Feldman* doctrine would bar this Court from reviewing the claim.